THE STATE BANK OF LISBON VS. D. C. CULLEN, DEFENDANT AND
APPELLANT, AND LEWIS ELIJAH AND THOMAS A. CURTIS,. DE-
FENDANTS AND RESPONDENTS.

Opinion filed April 17, 1909.

**Vendor and Purchaser — Brokers — Lien — Negotiable Instruments.**

1. The respondent C. negotiated a sale of a section of land from ap-
pellant to defendant E. on the crop payment plan; nothing being paid
down.  A contract was executed by the parties, but not recorded,
wherein the appellant agreed that if certain acts were done, among
others being the payment of the purchase price by the defendant E,
he would deed the land described to said defendant.  Payment was to
be made by delivering one-half of the crop raised each year free from
expense to appellant, and the application of the proceeds on the agreed
price.  The contract neither mentioned nor described any notes, but
three notes were given, one being for an amount equaling $27 per
acre for the land and due in 10 years.  The other two amounted to
$3 per acre, and were due the 1st of the next November after the
contract was entered into.  The two latter represented C.'s compensa-
tion for negotiating the purchase and sale.  At his suggestion they
were indorsed by appellant without recourse before delivery to him.
On their receipt he transferred them to plaintiff and respondent as col-
lateral security to indebtedness, most of which was pre-existing.  Such
notes in no way refer to the contract. We find from the evidence that it
was agreed between appellant and C. at the time such notes were
so endorsed that there should be no lien as security therefor upon the
land or appellant's interest in the crop.

*Held,* that the plaintiff, even though an indorsee before maturity,
for a valuable consideration and without notice, took such notes free
from any lien upon appellant's interest in the crop and land.

Appeal from District Court, Ransom county; *Allen, J.*

Action by the State Bank of Lisbon against D. C. Cullen and
others.  Judgment for plaintiff, and defendant Cullen appeals.

Reversed and action dismissed.

*Glassford & Lacy,* for apellant D. C. Cullen.  *Rourke & Kvello,*
for respondent State Bank.  *Thomas A. Curtis,* in pro. per.

SPALDING, J.  This action was brought by the State Bank of
Lisbon, and in its complaint personal judgment is demanded against
the defendants for the sum of $1,920 and interest from the 1st
day of November, 1906, and decreeing a specific lien upon all the
crops of every name, nature and description sown, grown and
harvested during the year 1906, upon section 11, in township 134

north, of range 54, in Ransom county, and upon said land as security for the payment of the judgment and interest, and for a sale of said premises to satisfy such judgment. The court found the plaintiff entitled to a personal judgment against the defendants Elijah and Curtis for the sum prayed for, with interest, and that against the defendant Cullen plaintiff was entitled to the relief demanded in its complaint, and to a specific lien upon the land described therein, and upon one-half of the crops of every name, nature and description grown thereon during the season of 1906 as security for the payment of said sum of money and costs, and that the same be sold to satisfy such lien. Personal judgment was entered against the defendants Elijah and Curtis as demanded, and it was decreed that the plaintiff have a specific lien upon the land described and upon the wheat and oats and the defendant Cullen's share of the crops grown on said land in the season of 1906 as security for the payment of such judgment. The decree directed the sale of the defendant Cullen's share of the crop mentioned and of the real estate named. The decree relative to such sale being in the usual form and providing for a sale in the manner customary in actions to foreclose mortgages upon real estate. It is not necessary to recite at greater length its terms. The record in this case comprises something over 400 printed pages. Under the practice in such cases all the evidence offered was received. The judgment and decree was appealed from by the defendant Cullen and a trial de novo requested. It is therefore required of this court that the facts be found as though it were an original trial in this court. If we were compelled to find upon the whole record, many intricate and difficult questions would have to be considered, but, as we view the case, the determination of one or two questions of fact will enable us to ascertain the rights of the parties. Neither Elijah nor Curtis appeals.

So far as is necessary to recite the facts, they are as follows: Defendant Cullen was the owner of the land. He did business in Anselm, Ransom county, but his residence was in Fargo. Defendant Curtis was a real estate agent at Lisbon, and he negotiated a sale of the land described on the crop-payment plan to the defendant Elijah. Nothing whatever was paid down on the contract. By its terms Cullen agreed that if Elijah should first do and perform everything specified in the contract, or reasonably to be implied, to be done and performed within the time specified, and

surrender the contract, he would then sell and convey to Elijah by deed of warranty the land described. In consideration of such agreement Eljiah was to purchase said premises and to pay therefor the sum of $19,200, with interest at six per cent upon all deferred payments after the first day of November, 1906, and to pay taxes and assessments, and during each season to seed to wheat or other crops mentioned all the cultivated land upon such premises, furnishing the seed himself, and to haul and market each year, without expense to Cullen, the crop grown. The usual provisions for plowing were contained in the contract, and one-half of all the grain raised upon the premises during the year 1906 and each year thereafter was to be sold before the first day of November in the year grown, and the proceeds applied towards the payment of the principal and interest until the full purchase price and interest should be paid. The contract reserved the title to all of the crops raised during the life of the contract in the defendant Cullen, but each year after the plowing had been done and the crop divided the other half was to be released and set apart and surrendered to the defendant Elijah. It was also provided that in case he failed to make the payments required, or made default in any of the other provisions of the contract, he was to surrender possession of the premises to Cullen, and the payments theretofore made were to be retained as rental for the premises, and as liquidated damages due by reason of his failure to carry out the terms of the contract. The contract was not assignable by Elijah without the written consent indorsed thereon of Cullen. The contract also contained other provisions in detail, such as are usually inserted in similar contracts, which need not be set out more fully. The contract nowhere describes or mentions any notes. It bears date of the 26th day of February, 1906, but undoubtedly was not executed until the 9th day of March, 1906, at which time there were executed by defendant Elijah and delivered to the appellant Cullen three negotiable promissory notes, one for the sum of $1,280, another for the sum of $640, each bearing interest at 6 per cent per annum after the 1st day of November, 1906, and both due November 1, 1906, and one promissory note for the sum of $17,280 payable in 10 years.

We need not determine whose agent Curtis was in this transaction. Neither is it necessary to determine whether he made any misrepresentations as claimed by defendants Cullen and Elijah to either of them to induce the execution of the contract. At the time the con-

tract was executed and delivered, with the notes, to Cullen the two smaller notes were, pursuant to agreement, indorsed by Cullen without recourse to Curtis. They represented the commission which the latter was to get for negotiating the transaction. At or about the time Curtis received them, which was about the 10th of March, 1906, he indorsed them to the plaintiff as collateral security for an indebtedness of about, $2,700. April 9, 1906, Cullen and Elijah met at Anslem, and by mutual agreement canceled the contract. It was surrendered, marked "Canceled," and Cullen delivered the large note to Elijah, and told him that Curtis held the other two notes. Elijah's reason for the cancellation of the contract is claimed to be that the quality of the land was not as represented to him by Curtis, and that a considerable portion of it could not be put in crop. Curtis claims that Elijah inspected the land for himself. Cullen cancelled the contract because he claimed Curtis had misrepresented to him Elijah's ability to carry on and pay for the land; that, instead of being able to furnish the teams, machinery, seed, provisions and other necessaries, he was practically unable to do any part of it. The issues on these points need not be decided by us. Neither shall we determine what the effect of the indorsement without recourse and delivery of negotiable notes before maturity to an innocent party may be upon the security. The appellant argues strenuously that such indorsement by the holder of the security who still holds title to the property involved is to release the security as to such notes. We find some very well-considered authorities holding this to be the law, and distinguishing between instances where the title is retained by the vendor and indorser and those in which the title is in the maker of the note, as in the case of a mortgage. The notes in question, as well as the contract, were executed by Elijah and delivered to Curtis, who transmitted them to the appellant Cullen from Lisbon to Fargo, after a verbal personal agreement that this should be done, whereupon Cullen endorsed the two notes as stated, and returned them with Elijah's copy of the contract to Curtis. Plaintiff claims, and relies largely upon such claim, that there was a verbal agreement between him and Cullen that the contract held by the latter should remain as security for the payment of the notes given Curtis; that Curtis should have a lien upon everything which was covered by the contract. The trial court so found. With this finding of fact we cannot agree. Our reasons for not doing so may be stated as

follows: The testimony on the subject is in direct conflict. On the side of the plaintiff it tends to show that the notes evidenced the interest of Curtis in the contract, that he and Cullen talked over how he was going to get his commission, and that he suggested to Cullen that the notes be made to evidence his interest in the contract, and to come due the 1st of November, 1906, and to be paid out of the first crops raised on the land, and that the lien should stand as security, and that Cullen assented to this. This testimony is wholly uncorroborated. On the other hand, Cullen testifies to all the particulars of the transaction; that in an interview with Curtis, when the latter submitted the offer to buy from Elijah, he told Curtis that he was not to be holden for the commission in any shape or manner, and that he must look to Elijah for his commission, and have no lien therefor, and that Curtis said he would prepare a contract and notes and send to him, and directed him to indorse his notes without recourse, and that he (Cullen) would not be held liable in any way; that he did not expect any lien to secure his commission; that Curtis prepared a contract which described two notes, one for $17,200, the other for $1,920, and sent the contract and notes to him at Fargo; that he examined the contract and construed it as giving a lien to secure the $1,920 note to Curtis; that he took it to Pierce & Tenneson, attorneys in Fargo, who placed the same construction upon it; that he thereupon employed Pierce & Tenneson to draft a new contract which should not give Curtis a lien, and the contract which was subsequently executed was the one so prepared, and for this reason: That about March 2d or 3d he went to Lisbon and saw Curtis, and told him that he could not sign the first contract because it would give him a lien, which was not agreed upon, and told him that he would not do anything of that kind, but that he had another contract in his pocket which, if Elijah would sign, the deal would be all right but, if not, the deal would be off; that Curtis examined the contract, and said it would be all right. He testifies that he then told Curtis that the understanding was that he was not to be liable on the commission notes in any way; that Curtis was to look to Elijah for his pay and he could not stand having that put in the contract, and Curtis step in and take his share of the crop, and have a lien upon the land as he understood it; that Curtis replied that he would not do anything of that kind; that it was not according to the agreement, and that Cullen was not liable for his commission in any way; that he was to look to Elijah for it,

and that Cullen should sign without recourse and would not be liable in any way, shape, or manner; that Curtis told him that he was going to sell Elijah cows and horses on which he would have a mortgage; that Elijah had three or four boys who were going to work out; and that he would pay, and that he was not afraid of his commission as Elijah was all right financially.

It is conceded that two contracts were prepared. Both are in evidence. It is also conceded that Cullen refused to sign the first contract. No explanation is made by Curtis. New notes were drawn when the second contract was prepared placing the commission in two notes, instead of one, as had originally been done. This change in the notes was made for the convenience of Curtis. The contracts are not alike in form; and, while they differ in some matters of substance, yet not so materially as to afford self-evident reasons for Cullen's refusal to execute the first when he executed the second, except that the second and executed contract does not describe any notes whatever. We find from these facts very strong corroboration of Cullen's version of the agreement. His explanations of his reasons for executing the second and refusing to execute the first contract are the only explanations given and are reasonable, particularly in view of the fact that Curtis' notes were due immediately after the first crop would be harvested, and that he was not taking his commission on the percentage basis, but was adding it to the selling price of the land. This conduct of Cullen is not denied, except as to the reasons given. The instructions by Curtis to indorse without recourse are in writing. The notes contained no reference to the contract, and in no manner disclosed that they carried security. We find that it was expressly agreed by Cullen and Curtis that Curtis took his commission notes without any recourse whatsoever, either under the notes or the contract, on Cullen or his property. What legal principles may have been applicable to the notes indorsed without recourse and delivered to respondent as collateral security, in the absence of any agreement, we do not determine, as it is perfectly clear that Curtis took such notes without security. If the bank parted with any value on receiving these notes from Curtis which from all the evidence is doubtful, it did not exceed $50. The president of the bank was the officer who transacted the business of taking the notes from Curtis, and his testimony on the subject is very vague and unsatisfactory. The evidence tends to show that at the time the notes were transferred to the respondent bank a contract was

shown the president, and that he was informed by Curtis that the notes were secured by such contract. It is clear to us that, if any contract was shown him, it was a copy of the first contract which was never executed by Cullen, and not the contract on which this suit is brought. Under these facts, it is plain that Curtis had no lien or security, and that he could therefore transfer none to the respondent without the knowledge or consent of either Cullen or Elijah, or both, and that respondent cannot maintain an action to enforce a lien upon either Cullen's share of the crops or the land. Many other interesting questions arose in the case, but, having arrived at the conclusion which we have stated, there would be no propriety in our passing upon them.

It may be added that the bank brought and tried this case on the theory that the contract was a mortgage, and that the rights of the parties were precisely the same as though Cullen had deeded the land to Elijah, and taken a mortgage back to secure the purchase price, including the notes held by it. Had this been done, while the rights of the parties in some respects would have been the same as now, yet the legal effect in many ways might have been different. Instead of a deed and a mortgage being given, this was an executory contract partaking more of the nature of a conditional sale contract than a mortgage. The title stood in Cullen at all times and the contract was never recorded or filed.

The judgment of the district court is reversed, and the action dismissed. All concur.

MORGAN, C. J., not particitating on account of illness.